GEORGE W. HIGGINS

*v.*

THE ILLINOIS TRUST AND SAVINGS BANK *et al.*

*Opinion filed December 18, 1901.*

1. CORPORATIONS—*when an assignee of stock is liable to corporation's creditors for unpaid balance.* In a suit by creditors to wind up an insolvent corporation and charge the stockholders with the unpaid balance due on the stock, an assignee of such stock is primarily liable for an assessment made by the court, where he had notice that the stock was not fully paid although it was marked "full paid and non-assessable."

2. SAME—*when an assignee of stock has notice that it is not fully paid.* A stockholder in a cable company who has paid but $32 per share for stock of the par value of $100, and who exchanges it, share for share, for stock in a railroad corporation knowing that the latter was organized for the sole purpose of acquiring the cable company property and that its entire stock was exchanged for cable company stock without further payment, must be held to know that the railroad stock was not fully paid.

3. SAME—*extent of warranty by the seller of stock in corporation.* A vendor of stock in a corporation impliedly warrants that the same is genuine and that he is the owner thereof and authorized to transfer title, and if the assignee desires further protection he must exact a special guaranty.

*Higgins* v. *Illinois Trust and Savings Bank,* 96 Ill. App. 29, affirmed.

WRIT OF ERROR to the Branch Appellate Court for the First District;—heard in that court on writ of error to the Circuit Court of Cook county; the Hon. ELBRIDGE HANECY, Judge, presiding.

PADDOCK & BILLINGS, for plaintiff in error:

A purchaser or assignee of stock which has not been fully paid does not become liable to the corporate creditors for the unpaid balance, where the stock has been issued as fully paid, and he has acquired the same in good faith and without notice it has not been fully paid. *Coleman* v. *Howe,* 154 Ill. 471; *Sprague* v. *Bank,* 172 id. 149.

The Pacific Railway Company, in consideration of the assets turned over to it by its stockholders, offered to issue, and did issue, its stock to them as full paid and non-assessable. This transaction, executed by delivery of the stock, was a valid and binding contract between the parties, subject only to the rights of creditors. *Sawyer* v. *Hoag,* 17 Wall. 619; *Insurance Co.* v. *Frear,* 97 Ill. 54; *Scovil* v. *Thayer,* 105 U. S. 153; *Sprague* v. *Bank,* 172 Ill. 166; *Winston* v. *Dorsett Co.* 129 id. 64.

It is entirely competent for parties dealing in stock to shape their contracts as they may see fit, and the office of the court will be to enforce the contract as made by the parties. Benjamin on Sales, (6th Am. ed.) 623, 627, 631; *Morrison* v. *Thompson,* 85 Ill. 16; *Drennan* v. *Bunn,* 124 id. 184; *Wheeler* v. *Reed,* 36 id. 81; *Thorne* v. *McVeagh,* 75 id. 81; *Reed* v. *Hastings,* 61 id. 206; *Robinson* v. *Harvey,* 82 id. 58; *Power* v. *Barham,* 4 A. & E. 473; *Hawkins* v. *Berry,* 5 Gilm. 36.

Stockholders in a corporation who participate or aid in the issue of paid-up stock upon payment of less than its par value cannot afterwards complain of the transaction, either in their own behalf, as stockholders or creditors, or in behalf of the corporation. They are bound by estoppel or acquiescence. *Ten Eyck* v. *Railroad Co.* 114 Mich. 494; *Nicrosi* v. *Land Co.* 115 Ala. 429; Cook on Cor-

porations, (4th ed.) sec. 39, p. 97; *Callanan* v. *Windsor*, 78 Iowa, 193; *Green* v. *Abietine Co.* 96 Cal. 322.

WALKER & PAYNE, for defendant in error the Illinois Trust and Savings Bank.

EDWIN BURRITT SMITH, and CLAYTON R. TAYLOR, for defendants in error Charles L. Raymond *et al.:*

The rule of law is, that the purchaser of stock takes it with its benefits and subject to its liabilities. The only exception to this rule is in favor of *bona fide* purchasers of stock issued as full paid and non-assessable. Thompson on Corporations, secs. 322, 323; *Webster* v. *Upton*, 91 U. S. 64; *Kellogg* v. *Stockwell*, 75 Ill. 68; *Coleman* v. *Howe*, 154 id. 458; *Thebus* v. *Smiley*, 110 id. 316; *Brinkley* v. *Hamilton*, 67 Md. 163; *Bergden* v. *Kotzhausen*, 70 Wis. 589; *Hunt* v. *Lucas*, 68 Mo. App. 518; *Sprague* v. *Bank*, 172 Ill. 149; 23 Am. & Eng. Ency. of Law, 880, and authorities.

A warranty implies a representation of fact by the seller intended to induce the sale and relied upon by the purchaser as true. 28 Am. & Eng. Ency. of Law, 747, and authorities cited; *Kenner* v. *Harding*, 85 Ill. 264; *McLennan* v. *Vohmen*, 75 Cal. 558; *Sweet* v. *Colgate*, 20 Johns. 196; *Reed* v. *Hastings*, 61 Ill. 266; *McAleer* v. *McMurray*, 58 Pa. St. 126; *Priest* v. *White*, 89 Mo. 609.

There is an implied warranty of title and of genuineness, but not that the certificate is not part of an over-issue or that the corporation has good title to its property. Lowell on Transfers of Stock, sec. 133, and authorities cited; *Bank* v. *Kurtz*, 99 Pa. St. 344; *State* v. *Railroad Co.* 34 La. Ann. 947; *Allen* v. *Pegram*, 16 Iowa, 163.

There is no express warranty. If the words "this stock is full paid and non-assessable" constitute a warranty, it is the covenant of the company and not of the vendors. *Cunningham* v. *Spier*, 13 Johns. 392; *Houston* v. *Burney*, 2 S. & M. 583; *Grote* v. *Clerihan*, 32 Ill. App. 323; *Strong* v. *Loeffler*, 85 Ill. 73.

Even the covenant between the corporation and the person named in the certificate, if any, did not pass to the assignee. Covenants do not run with personal property. The assignment merely passed "the shares of stock within mentioned," and constituted the assignee the "attorney" of the assignor to transfer it "on the books of the company." 1 Smith's Lead. Cas. 176, 200; *Gorton* v. *Girgor*, 3 Best & Smith, 89; *Waldo* v. *Hall*, 14 Mass. 486.

Even if the assignment in blank of the old certificates made the assignors liable for the recitals on the face thereof, the voluntary surrender by the assignees of such certificates and the acceptance by them of new ones direct from the corporation operated as a novation. *In re Dickson*, 13 Fed. Rep. 109; *Spycher* v. *Warner*, 5 L. R. A. 414, note; *Draper* v. *Hitt*, 43 Vt. 439; *Nebraska* v. *Hill*, 47 Neb. 456; *Parson* v. *Tillman*, 95 Ind. 452.

Mr. JUSTICE HAND delivered the opinion of the court:

A bill in chancery was filed on January 19, 1891, by Charles F. Morse, a judgment creditor of the Pacific Railway Company, in the circuit court of Cook county, in behalf of himself and all other creditors of said company, under section 25 of the Corporation act, (Hurd's Stat. chap. 32,) against said company and its stockholders, to enforce the statutory liability of said stockholders for any unpaid balance upon their stock.

The Pacific Railway Company, an Illinois corporation, was organized in 1889 to acquire the street railway properties in Los Angeles, California, then owned by the Los Angeles Cable Railway Company. This court heretofore held (*Sprague* v. *National Bank of America*, 172 Ill. 149,) that the stock of the Pacific Railway Company was not fully paid up by the transfer therefor of the stock of the Los Angeles Cable Railway Company, and remanded this cause to the circuit court with directions to that court "to enter a decree charging the appellants (stockholders) who obtained stock in the Pacific Railway Com-

pany in exchange for stock in the Los Angeles Railway
Company, and those, if any, who obtained stock in the
Pacific Railway Company by assignment from former
owners, having at the time notice that such stock was
issued by the Pacific Railway Company in exchange for
such stock in the Los Angeles Cable Railway Company,
·or notice that it was not in fact paid in full by the sub-
scribers, respectively, with their *pro rata* share ·of such
debts of the company to the extent of the unpaid, if any,
portion of their stock, respectively." In accordance with
such direction the circuit court on July 1, 1898, entered
a decree fixing the unpaid liability upon the stock of the
Pacific Railway Company at $68 per share, and as to the
assigned stock provided: "The question of whether as-
signor or assignee is, or both are, liable, and where both
are liable whether the assignor or assignee, as between
themselves, is liable, * * * the court doth order shall
now be referred to Jeremiah Leaming, Esq., master in
chancery of this court, to take evidence and report his
conclusions thereon.   The master is directed, when he
shall have determined which of said defendants is liable
to contribute, to fix the amount of such liability at the
rate of $68 per share."

The master found and reported that the plaintiff in
error, in the month of September, 1889, became the owner
and holder of 262 shares of the capital stock of the Pa-
cific Railway Company of the par value of $100 a share;
that he acquired the said shares of stock by exchanging
therefor a like number of shares which he held of the
capital stock of the Los Angeles Cable Railway Com-
pany of the par value of $100 a share, for which he paid
$32 a share; that on or about December 12, 1889, he ·pur-
chased of James C. King 375 shares of the capital stock
of the said Pacific Railway Company and paid him there-
for $32 a share; that said King acquired the said stock
by exchanging therefor a like number of shares of the
Los Angeles Cable Railway Company stock, for which

he paid $32 a share; that on or about January 11, 1890, he purchased of Charles L. Raymond 50 shares of the capital stock of said Pacific Railway Company and paid him therefor $25 a share; that said Raymond acquired said stock by exchanging therefor a like number of shares of the Los Angeles Cable Railway Company stock, for which he paid $32 a share, and that the plaintiff in error, prior to and at the time of the purchase of said stock from King and Raymond, respectively, had knowledge of the object and purpose for which the Pacific Railway Company was organized; that he is liable to the creditors of the Pacific Railway Company on the 262 shares of said capital stock which he acquired from said company direct in the sum of $68 per share, amounting to $17,816, and that he is primarily liable to the creditors of said company upon the 375 shares of said capital stock purchased of King in the sum of $68 per share, amounting to $25,500, and that he is primarily liable to the creditors of said company on the 50 shares of said capital stock purchased from said Raymond in the sum of $68 per share, amounting to $3400.   The master's report was approved and a decree entered against the plaintiff in error for said amounts, respectively, with interest thereon from July 1, 1888, which decree has been affirmed by the Appellate Court for the First District, and the record has been brought to this court by George W. Higgins by writ of error, for a further review thereof.

The main question presented by this record is whether, in a suit by creditors to wind up an insolvent corporation and charge the stockholders with the balance due on unpaid stock, the assignee or assignor of assessed stock shall respond to the creditor for an assessment made by the court thereon.

The general rule is, that the assignee of stock succeeds to all the rights and assumes all liabilities of the assignor, and in case of the insolvency of the corporation is liable to contribute to the payment of its debts

to the extent that the stock is unpaid. If, however, the stock has been issued as fully paid and the assignee has acquired the same in good faith and without notice that it has not been fully paid, he is not liable to the creditors of the corporation for any unpaid balance due upon the stock. (3 Thompson on Corporations, sec. 3222; *Kellogg* v. *Stockwell,* 75 Ill. 68; *Thebus* v. *Smiley,* 110 id. 316; *Coleman* v. *Howe,* 154 id. 458; *Sprague* v. *Bank,* 172 id. 149; *Webster* v. *Upton,* 91 U. S. 65.) Nor is this rule changed by section 8 of the Corporation act, which only fixes the liability of assignors and assignees to the corporation and not between themselves. In the section from Thompson on Corporations above referred to it is said: "The transferee succeeds not only to the rights, but also to the liabilities of the transferer. * * * In the event of the insolvency of the corporation he is liable to contribute to the payment of its debts in like manner as if he were an original subscriber." In *Coleman* v. *Howe,* 154 Ill. 458, we say (p. 471): "A purchaser or assignee of stock which has not been fully paid does not become liable to the corporate creditors for the unpaid balance, where the stock has been issued as fully paid and he has acquired the same in good faith and without notice that it has not been fully paid."

The stock in question was issued as fully paid, and, it may be conceded, was acquired in good faith. Was it acquired without notice that it was not fully paid? We think not. The plaintiff in error and his vendors were stockholders in the cable company, knew the objects for which the Pacific Railway Company was organized, and exchanged their stock in the cable company for stock in the Pacific Railway Company, share for share. As no stock was issued by the Pacific Railway Company except in exchange for cable company stock, and as the entire stock of the Pacific company was issued and exchanged for cable company stock without any further payment therefor, and the plaintiff in error paid only $32 a share

for the stock which he received directly from the Pacific Railway Company a short time before he purchased said stock, he must be held to have purchased such stock with notice that it was not fully paid. At the time of the sale of said stock there were no representations made to the plaintiff in error by said assignors, or either of them, that the same was full paid stock, and it is apparent that the stock was purchased by plaintiff in error upon his own knowledge of the stock, which was equal to that of the assignors or either of them, and not by reason of the fact that the stock certificates stated "this stock is full paid and non-assessable." The plaintiff in error may have thought the stock was non-assessable. He knew, however, it was not full paid stock. The fact, therefore, that the stock was stated to be full paid did not amount to a warranty which would relieve the plaintiff in error from the payment of an assessment thereon. Neither does the fact that both the assignees and assignors were owners of cable stock, which they had exchanged for Pacific Railway stock at or about the time it was organized, estop the creditors of the corporation or the assignors from insisting that plaintiff in error be held primarily liable for such assessments. The assignors, by the sale of such stock, warranted to the assignee that the same was genuine; that they were the owners thereof and authorized to transfer the title thereto. If the assignee desired anything further he should have exacted a special guaranty for his protection. *First Nat. Bank of Sterling* v. *Drew*, 191 Ill. 186.

Under the authority of *Florsheim* v. *Illinois Trust and Savings Bank*, 192 Ill. 382, the court did not err in allowing interest from October 1, 1898, on said assessments.

Finding no reversible error in this record the judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*